UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Courtney Rodgers,<br><br>　　　Plaintiff,<br><br>v.<br><br>Jefferson Capital Systems, LLC,<br><br>　　　Defendant. | Case No.<br><br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE OHIO CONSUMER SALES PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Courtney Rodgers ("Courtney"), is a natural person who resided in Euclid, Ohio, at all times relevant to this action.

2. Defendant, Jefferson Capital Systems, LLC ("JCS"), is a Georgia limited liability company that maintained its principal place of business in St. Cloud, Minnesota, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Courtney's claims under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 et seq. ("OCSPA") because they share a common nucleus of operative fact with Courtney's claims under the FDCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, JCS collected consumer debts.

7. JCS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of JCS's revenue is debt collection.

9. JCS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. JCS meets the definition of a "supplier" as defined by Ohio Rev. Code § 1345.01(C). *See Midland Funding L.L.C.. V. Brent, 644 F.Supp2d 961, 976 (N.D. Ohio 2009)(citing cases).*

11. As described, *infra*, JCS contacted Courtney to collect a debt that was incurred primarily for personal, family, or household purposes.

12. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

13. Courtney is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14. Courtney is a regionally recognized IT/Security professional that identifies and mitigates financial data risk.

15. Courtney is a former subscriber of Verizon Wireless, a mobile phone carrier.

16. Courtney is a current subscriber of My Family Mobile, a mobile phone carrier.

17. As a My Family Mobile customer, Courtney is dissatisfied with My Family Mobile's call quality, features, and reliability.

18. As such, Courtney recently called Verizon Wireless to set up new cellular phone service.

19. Verizon Wireless refused to open an account for Courtney explaining that Courtney had a prior Verizon Wireless account currently in collection.

20. Verizon Wireless indicated they would open new service for Courtney once Courtney paid that old account and after Courtney supplied them with a payment confirmation number.

21. However, Verizon Wireless refused to go into detail about the account because it was placed with an external debt collector.

22. Around April 22, 2022, Courtney received a letter from JCS regarding this old Verizon account.

23. In the letter, JCS referenced the filling of legal action on the account and incorrectly claimed that the debt was outside of the statute of limitations.

24. According to the letter, the date of default on the account was June 6, 2019.

25. Therefore, under Ohio Law, the debt was still within the applicable statute of limitations and therefore was the letter's statements about the age of the account was false.

26. In an effort to immediately escape My Family Mobile's dreaded wireless service, on April 28, 2022, Courtney immediately telephoned JCS to pay off the alleged debt.

27. Upon answering the phone, JCS demanded Courtney to provide sensitive personal information to verify her identity.

28. For example, JCS demanded Courtney provide her full social security number.

29. Courtney, a senior IT Methods and Procedures specialist, and identity theft victim, explained she was not comfortable with providing her social security number over a recorded phone line.

30. In her professional role, Courtney identifies and mitigates systematic data risk, and a significant portion involves leading people, processes, and technology systems to decrease the risk of vulnerability and improve performance of enterprise data management.

31. Moreover, one of Courtney's most firmly held ideals is that social security numbers should never, without exception, be provided over a recorded telephone line.

32. In her professional capacity, Courtney has witnessed recorded phone calls systematically become compromised leading to identity theft and harm.

33. Courtney explained this to JCS and offered to provide JCS with their internal account number, Courtney's address or Courtney's phone number for verification.

34. JCS then insultingly mocked Courtney for her unwillingness to even provide the last four numbers of her social security number.

35. Courtney confirmed that she was uncomfortable with any part of her social security number being repeated on a recorded line and, again, offered alternative ways of verification.

36. In response to Courtney's plea, JCS defiantly and loudly read Courtney's social security number over the recorded line.

37. This outraged Courtney and made her feel demoralized.

38. Shocked, Courtney lamented why the collector had just read her social security number on a recorded line.

39. As the call progressed, Courtney proceeded to pay the entire balance of the alleged Verizon Wireless account.

40. After the JCS processed her payment, Courtney asked for the confirmation number so that she could contact Verizon immediately to open new cellular service.

41. JCS refused to provide a confirmation number and, instead, instructed Courtney to call back in early May to obtain it.

42. Courtney became frustrated knowing she was unable to open a new Verizon Wireless account until she received the confirmation number.

43. In early May, as instructed, Courtney called JCS to obtain the confirmation number.

44. During this call, JCS refused to provide Courtney with her confirmation number until Courtney disclosed her social security number on a recorded line.

45. During this call, JCS also told Courtney that they were attempting to collect a debt.

46. This confused Courtney as she had believed that the debt was paid.

47. JCS also refused to provide Courtney with her confirmation number.

48. Every additional day that Courtney is forced to remain a My Family Mobile customer, her productivity at work is diminished and she is constantly told by supervisors, co-workers, and friends that they had called, at times Courtney was available, and Courtney's phone did not ring.

49. JCS's refusal to provide a confirmation number forced Courtney to remain a My Family Mobile customer.

50. JCS's collection efforts caused Courtney emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

51. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 50 above as if fully set forth herein.

52. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

53. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

54. The likely effect of Defendant's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Plaintiff.

55. Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of the debt.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

56. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 50 above as if fully set forth herein.

57. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

58. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 50 above as if fully set forth herein.

59. Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT FOUR

### Violation of the Ohio Consumer Sales Practices Act

60. Plaintiff re-alleges and incorporates by reference Paragraphs 6 through 50 above as if fully set forth herein.

61. Defendant's actions in attempting to collect the alleged debt from Plaintiff as described above constitute a "consumer transaction" as defined in Ohio Rev. Code § 1345.01(A).

62. Defendant's actions and omissions described above constitute unfair, deceptive, and unconscionable acts and practices, in violation of Ohio Rev. Code § 1345.02 and the substantive rules promulgated under the OCSPA.

63. Defendant knowingly committed the unfair and unconscionable acts and practices described above.

### JURY DEMAND

64. Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

65. Plaintiff prays for the following relief:

    a. Judgment against Defendant for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against Defendant under the OCSPA for treble damages, actual damages, non-economic damages, punitive damages and reasonable attorney's fees, witness fees, court costs, and other costs incurred by Plaintiff.

    c. For such other legal and/or equitable relief as the Court deems appropriate.

                                      RESPECTFULLY SUBMITTED,

Date: May 11, 2022                 By: /s/ Jeffrey S. Hyslip
                                        Jeffrey S. Hyslip, Esq.
                                        Hyslip Legal, LLC
                                        207 S. Harrison St., Suite A
                                        Algonquin, IL 60102
                                        Phone: 614-490-4224
                                        jeffrey@hysliplegal.com
                                        Ohio Bar No. 0079315

                                        *Attorney for Plaintiff*